## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

HUBERTINE GROSDIDIER,                  )
                                       )
                    Plaintiff,         )        CIVIL ACTION
                                       )
v.                                     )
                                       )        No. 05-2090-KHV
LEISURE HOTELS, LLC,                   )
                                       )
                    Defendant.         )
_____)

## MEMORANDUM AND ORDER

Hubertine Grosdidier brings suit against Leisure Hotels, LLC ("Leisure") under the Age

Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 et seq., and the Kansas Age

Discrimination In Employment Act ("KADEA"), Kan. Stat. Ann. § 44-1111 et seq., alleging that

defendant terminated her employment because of her age.  The matter is before the Court on

Defendant's Motion For Summary Judgment (Doc. #28) filed January 18, 2006.  For reasons stated

below, the Court finds that defendant's motion should be sustained.

## Summary Judgment Standards

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories,

and admissions on file, together with the affidavits, if any, show no genuine issue as to any material

fact and that the moving party is entitled to a judgment as a matter of law.  Fed. R. Civ. P. 56(c);

accord Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986); Vitkus v. Beatrice Co., 11 F.3d

1535, 1538-39 (10th Cir. 1993).  A factual dispute is "material" only if it "might affect the outcome

of the suit under the governing law."  Anderson, 477 U.S. at 248.  A "genuine" factual dispute

requires more than a mere scintilla of evidence.  Id. at 252.

The moving party bears the initial burden of showing the absence of any genuine issue of

material fact.  See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Hicks v. City of Watonga, Okla., 942 F.2d 737, 743 (10th Cir. 1991).  Once the moving party meets its burden, the burden shifts to the nonmoving party to demonstrate that genuine issues remain for trial "as to those dispositive matters for which it carries the burden of proof."  Applied Genetics Int'l, Inc. v. First Affiliated Secs., Inc., 912 F.2d 1238, 1241 (10th Cir. 1990); see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986); Bacchus Indus., Inc. v. Arvin Indus., Inc., 939 F.2d 887, 891 (10th Cir. 1991).  The nonmoving party may not rest on her pleadings but must set forth specific facts.  Applied Genetics, 912 F.2d at 1241.

The Court must view the record in a light most favorable to the party opposing summary judgment.  See Deepwater Invs., Ltd. v. Jackson Hole Ski Corp., 938 F.2d 1105, 1110 (10th Cir. 1991).  Summary judgment may be granted if the nonmoving party's evidence is merely colorable or is not significantly probative.  See Anderson, 477 U.S. at 250-51.  "In a response to a motion for summary judgment, a party cannot rely on ignorance of facts, on speculation, or on suspicion, and may not escape summary judgment in the mere hope that something will turn up at trial."  Conaway v. Smith, 853 F.2d 789, 794 (10th Cir. 1988).  Essentially, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law."  Anderson, 477 U.S. at 251-52.

### Factual Background

The following facts are either undisputed or, where disputed, construed in the light most favorable to plaintiff.[1]

--------

[1]    In her response to defendant's statement of facts, plaintiff states as follows:

(continued...)

On March 31, 2003, Leisure Hotels, LLC ("Leisure") hired plaintiff as sales director for the Merriam Hampton Inn ("Merriam Hampton" or "the Hotel").  Plaintiff was 64 years old when she began to work for Leisure.  Wayne Heintz, who was Leisure's Vice President and Chief Operations Officer, hired plaintiff after consulting with Shelly Poppelreiter, Corporate Director of Sales and Marketing.  Poppelreiter reported to Heintz until Greg Clark replaced him.  Poppelreiter supervised

---

[1](...continued)
Plaintiff apologizes to the Court for not following the format for responding to Defendant's Statement of Uncontroverted Facts set out in local rule 56.1.  However, it is not practical for her to do so because Defendant has not complied with Rule 56.1(a) in that it did not provide a concise statement of material facts as to which Defendant contends [] no genuine issue exists.  Rather, Defendant's statements are lengthy, contain argument and multiple citations that do not relate to all of its statements but rather to only some of the statements.  While Plaintiff is generally able to determine which parts of defendant's complex statements are or are not controverted, she cannot do so in the traditional format.  Therefore, Plaintiff has stated which of Defendant's facts she does not controvert, by citing the number of Defendant's statement containing facts that she does not controvert and the specific statement contained in that numbered paragraph that is material and not controverted.  All of Defendant's alleged uncontroverted material facts that Plaintiff does not reference in the material facts that are stated below are controverted by Plaintiff.

Defendant's statement of facts includes paragraphs which generally range in length from one to four sentences.  In some paragraphs defendant follows the first or second sentence with a citation to the record, and then provides another citation to support the third and/or fourth sentence.  Although these paragraphs could have been separated into two shorter paragraphs, defendant's statement of facts substantially complies with Rule 56.1(a).  Further, although plaintiff purports to controvert all of defendant's facts which plaintiff "does not reference," plaintiff does not provide any record citations to controvert any of defendant's facts.  Plaintiff's attempt to controvert facts in this manner is insufficient under D. Kan. Rule 56.1, which provides that all material facts set forth in the statement of the movant shall be deemed admitted unless "specifically controverted" by the opposing party.  Vasquez v. Ybarra, 150 F. Supp. 2d 1157, 1160 (D. Kan. 2001) (citing Gullickson v. Southwest Airlines Pilots' Ass'n, 87 F.3d 1176, 1183 (10th Cir. 1996)).  Accordingly, under D. Kan. Rule 56.1(b), the Court accepts defendant's factual statements, which are adequately supported by record evidence, as true.  See Williams v. Potter, 331 F. Supp.2d 1331, 1336 (D. Kan. 2004).  Also, the Court does not consider factual assertions which the parties include only in the argument section of their briefs and not in their statements of fact.

the Leisure sales directors, including plaintiff.[2]  Dana Webb was the general manager for the Merriam Hampton and she also supervised plaintiff.  Webb was under 40 years old.

When plaintiff began working for defendant, her job description stated that "[t]he Director of Sales/Sales Manager position is responsible for the Top Line Revenue for the hotel, meeting or exceeding planned objectives for revenue, occupancy, ADR and RevPAR."[3]  Doc. #29-5 at 1.  The description also stated that "the "[d]uties listed herein are not limited to only those included, but also any other duties which may arise and are required or needed for completion by said position."  Id. at 2.

In Leisure hotels with a sales director such as the Merriam Hampton, no other employee has the same level of responsibility for hotel revenue.  Leisure primarily measures a sales director's performance on the amount of revenue and RevPAR numbers generated by the sales director's hotel. Leisure does not measure other hotel employees' performance in this manner.  During plaintiff's tenure with Leisure, a sales director could only receive a bonus by meeting or exceeding budgeted revenue for the hotel for the calendar quarter or year.  Plaintiff's job duties were similar to only one group of employees – other sales directors at other Leisure hotels.  The record contains no evidence about the performance of other Leisure directors of sales.

From the beginning of her employment, plaintiff understood that Leisure wanted to increase revenue at the Merriam Hampton.  Throughout 2003, Merriam Hampton's revenue lagged behind

---

[2]        Poppelreiter did not supervise hotel general managers or assistant managers.

[3]        RevPAR stands for "revenue per available room."  RevPAR is a function of revenue and available room count.  The hotel industry uses RevPAR as an indicator of hotel performance by comparing a hotel's RevPAR performance during a current period with the same period in a prior year as well as by comparing a hotel's RevPAR performance over some period of time against the hotel's competition.

defendant's expectations.  In October or November 2003, Leisure hired Greg Clark as a consultant to analyze several of Leisure's hotels and to develop strategies to increase revenue and RevPAR.[4] When Clark analyzed the Merriam Hampton, he determined that the marketing and sales strategies were not suitable.[5]  At that time, plaintiff's marketing and sales strategy was to make personal contact with corporate decision-makers and to lower rates to corporate customers whose stay patterns were typically short (less than 5 nights), mid-week stays.  Clark determined that to increase revenue and RevPAR at the Merriam Hampton, Leisure needed to (1) raise room rates, (2) stop discounting rates, (3) focus on "extended stay" business and (4) use telemarketing in lieu of face-to-face marketing.

On January 1, 2004, Clark replaced Heintz as Leisure's Vice President/Chief Operations Officer.  Clark was 55 years old at the time.  Gary Endicott, Executive Vice President and Chief Financial Officer for Leisure, stressed to Clark that the Merriam Inn had to increase revenue.  In January of 2004, Clark developed quarterly sales plans for several Leisure hotels – including the Merriam Hampton – which he had determined would benefit from an extended stay focus.  He set two primary goals for each of these hotels: (1) to increase the percentage of business dedicated to extended stays (5 or more consecutive nights) and (2) to set room rates and a rate guideline for each hotel based upon expected stay patterns and the hotel's market position.  Hotels were no longer

---

[4]     Clark was 55 years old when Leisure hired him.

[5]     In November of 2003, plaintiff knew that management believed that she was not bringing in enough revenue and that Clark was not satisfied with the performance of the Merriam Hampton.  The Hotel fell short of budgeted revenue by $265,000 for 2003, and plaintiff did not receive a bonus for the year.  The Merriam Hampton's 2003 RevPAR numbers were lower than in 2002.  In 2003 the Hotel's competitors outperformed it in 8 out of the 9 months that plaintiff was director of sales.  Competitors outperformed the Merriam Hampton during 11 of the 13 months that plaintiff worked there.

permitted to discount room rates below the rate guideline without prior approval from Clark or Poppelreiter. Clark expected the hotels to accomplish the new extended stay marketing focus through substantial telemarketing efforts instead of personalized visits. The quarterly sales plan assigned duties to plaintiff and to Webb, the hotel general manager.

On January 22, 2004, Clark presented the sales plan to plaintiff and told her to focus on telemarketing instead of her previous sales strategy.[6] Clark told plaintiff that he was not satisfied with the performance of the Merriam Hampton, that he thought the rates were too low, and that the hotel needed to generate more revenue. Plaintiff understood that Clark expected her to focus on telemarketing to make sales. Plaintiff told Clark that she did not believe the new strategy would work. Plaintiff reported to Poppelreiter the number of telemarketing calls that she made each week.

A few weeks after Clark initiated the new marketing plan, he and Poppelreiter were not satisfied with plaintiff's telemarketing efforts. On February 13, 2004, Poppelreiter set a goal of 168-190 telemarketing calls per week for plaintiff. Plaintiff did not object to this goal, but she made only 96 telemarketing calls the week of February 16 through February 20, 2004. Poppelreiter met with plaintiff on February 25, 2004 to discuss the Hotel's performance. Poppelreiter advised plaintiff that the Hotel was not performing up to Leisure's expectations. Plaintiff again expressed her disagreement with management over the new sales and marketing strategy.

In early March, Clark told plaintiff of his displeasure with her sales results. Plaintiff admits that she was not getting the results which Clark and Poppelreiter wanted. During that conversation, Clark told plaintiff that "the business is there, if you're not getting it, you're not doing your job." Plaintiff believes this comment was based on her age because she had heard "through the grapevine"

---

[6]    Before January 2004, plaintiff had not done much telemarketing.

that Clark did not make this comment to any other employees.

On March 5, 2004, Poppelreiter met with plaintiff and set a goal for plaintiff to make 100 telemarketing calls per day.  Poppelreiter's purpose was to help plaintiff get the results Leisure wanted and to encourage plaintiff to focus on telemarketing.  Plaintiff told Poppelreiter and Clark that she believed it was impossible to make 100 telemarketing calls per day.[7]

On March 8, 2004, Poppelreiter told plaintiff that the Hotel was underperforming and that plaintiff needed to turn things around immediately and focus on telemarketing.  Poppelreiter told plaintiff that if she did not improve, defendant would take further action, including possible termination.  On a written report of the meeting, plaintiff commented that "I disagree – not being able to quote rates hindered my performance tremendously" and "I would like to go on Record for saying that I have tried my utmost to sell this property – and it was working until all decision power was taken away from me."  Doc. #29-13.  These comments refer to Clark's decision to prohibit sales directors from deviating from the rate guidelines (e.g., discounting rates) without first obtaining permission from Clark or Poppelreiter.  Plaintiff cannot identify any other Leisure hotel or director of sales who had the ability to discount rates below the rate guidelines after January of 2004 without obtaining prior permission from Leisure management.

From March 8 through 12, 2004, plaintiff worked at the corporate office to make telemarketing calls.  She made 579 calls that week.  After that week, however, the number of calls

---

[7]      Although Poppelreiter also asked the general manager and assistant general manager to make an additional 60 calls per day (50 for the general manager and 10 for the assistant general manager), neither the general manager nor the assistant general manager reported to Poppelreiter, and she had no authority to order them to make such calls or to discipline them for failing to make the calls.

declined. [8]

On March 24, 2004, Poppelreiter told plaintiff that she wanted her to spend more time on telemarketing and suggested ways to structure her day to focus on telemarketing. On March 26, 2004, Poppelreiter and Dana Webb met with plaintiff and discussed the fact that revenue was down at the Merriam Hampton.

Plaintiff openly disagreed with Clark's new sales and marketing strategy for the Hotel on several occasions. Clark and Poppelreiter did not like the fact that plaintiff told them that the strategy would not work. Plaintiff does not know whether Clark and Poppelreiter would have reacted the same if a younger person had told them the new strategy would not work because "a younger person didn't stand up." Plaintiff Depo., Exhibit 2, pp. 172-174.

Between January 22 and the end of April of 2004, the Merriam Hampton RevPAR in comparison to its competitors was trending downward and was lower than the Hotel's previous year's performance. Clark and Poppelreiter believed that plaintiff's telemarketing effort was inconsistent. Clark decided to terminate plaintiff's employment because he was unhappy with the Hotel's revenue and RevPAR in comparison to its competitors. In addition, Clark had lost confidence that plaintiff was going to turn things around because she repeatedly criticized his sales strategy and did not recognize or accept that the sales and marketing strategies that she had used before were not successful. Poppelreiter concurred in Clark's decision. Defendant hired a 37- year-

---

[8]     Plaintiff made 132 telemarketing calls the week of March 15-22, 2004, another 434 calls the week of March 29-April 2, 2004, some 105 calls the week of April 12-17, 2004 and 277 calls the week of April 19-24, 2004. Plaintiff stated in her deposition that the goal of 100 calls per day constituted age discrimination. Plaintiff bases this belief on a conversation with a sales director for another Leisure hotel who told plaintiff that she was making 175 calls per week. Plaintiff does not recall the sales director's name, and this purported evidence is therefore hearsay and not admissible.

old woman to replace plaintiff.

Since plaintiff's termination, the market measurements for the Merriam Hampton have improved. Average monthly revenue, annual revenue, the average occupancy rate, number of rooms sold and RevPAR have all increased substantially.

Plaintiff believes that Webb and the front desk clerks did not make sufficient telemarketing calls each week.[9] Webb allowed the front desk clerks to deviate from the rate guidelines if the occupancy rate was below a certain level, but the record does not reflect whether Clark and Poppelreiter were aware of this practice. In addition to the expectations for telemarketing, plaintiff filled in at the front desk of the Hotel once or twice a week for about 30 to 90 minutes at a time. Other employees, including the general manager, also filled in at the front desk. One time plaintiff had to fill in at the front desk while other employees attended a "We Care" training meeting.

Plaintiff never told Clark or any other Leisure employee that she felt she was being discriminated against on the basis of age. No Leisure employee made any age-related comments to plaintiff during her employment with Leisure. Plaintiff was older than any other person hired to work at the Merriam Hampton from 2003 to November of 2005. Clark, who made the decision to terminate her, did not hire anyone over age 40 after he became defendant's vice president and chief operating officer. During 2004 and 2005, only one Merriam Hampton employee beside plaintiff was over 40.

Plaintiff claims when defendant terminated her employment and replaced her with a younger employee, it discriminated against her on the basis of age, in violation of the ADEA and the KAAD. Complaint, (Doc. #1) at 3. Defendant argues that plaintiff cannot establish a prima facie case of age

---

[9]     Plaintiff does not know how many telemarketing calls they made.

discrimination. Alternatively, defendant argues that even if plaintiff has set out a prima facie case, it had a legitimate business reason for its action and plaintiff has not shown that its reason is pretextual.

## Analysis

The ADEA makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). The ADEA bans discrimination against employees based on age, but limits the protected class to workers who are 40 or more years old. Greene v. Safeway Stores, Inc., 98 F.3d 554, 557 (10th Cir. 1996); 29 U.S.C. § 621 et seq. The KADEA also bans discrimination against employees based on age. K.S.A. § 44-1112(a). The framework and analysis for ADEA and KADEA claims are the same. To prevail on an ADEA claim, plaintiff must establish that age was a determining factor in the employer's challenged decision. Greene, 98 F.3d at 557. Plaintiff need not show age was the sole reason for her termination, but she must show that age "made the difference" in the employer's decision. Greene, 98 F.3d at 557. Plaintiff may meet this burden by direct evidence of age discrimination or by the burden-shifting framework of McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-05 (1973), and Texas Department of Community Affairs v. Burdine, 450 U.S. 248, 252-56 (1981). See Wood v. City of Topeka, 17 Fed. Appx. 765, 767-68 (10th Cir. 2001); Kendrick v. Penske Transp. Servs., Inc., 220 F.3d 1220, 1225 (10th Cir. 2000). In this case, plaintiff does not argue that she has direct evidence of age discrimination. Therefore, the Court analyzes her claims under the McDonnell Douglas burden-shifting framework.

Under McDonnell Douglas, plaintiff initially bears the burden of production to establish a

prima facie case of discrimination.  411 U.S. at 802.  If plaintiff establishes a prima facie case, the burden shifts to defendant to articulate a facially nondiscriminatory reason for its actions.  See Reynolds v. Sch. Dist. No. 1, 69 F.3d 1523, 1533 (10th Cir. 1995).  If defendant articulates a legitimate nondiscriminatory reason, the burden shifts back to plaintiff to present evidence from which a reasonable jury might conclude that defendant's proffered reason is pretextual, that is, "unworthy of belief." Beaird v. Seagate Tech., Inc., 145 F.3d 1159, 1165 (10th Cir. 1998) (quoting Randle v. City of Aurora, 69 F.3d 441, 451 (10th Cir. 1995)).

## A.      Prima Facie Case

Defendant contends that plaintiff cannot establish a prima facie case of age discrimination. Generally, to establish a prima facie case of age discrimination,  plaintiff must show that  (1) she was a member of the protected age group; (2) she was doing satisfactory work; (3) she was terminated or otherwise suffered an adverse employment action; and (4) defendant replaced her with a younger person or treated her less favorably than similarly situated younger employees.  See Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 142 (2000); Greene, 98 F.3d at 558.

As a preliminary matter, defendant correctly notes that other than termination, none of defendant's actions constitute "adverse employment action."   To establish adverse employment action, plaintiff must experience "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 761 (1998).  The Tenth Circuit liberally defines adverse employment action.  Hill v. Steven Motors, Inc., 97 Fed. Appx. 267, 278 (10th Cir. 2004); Sanchez v. Denver Pub. Schs., 164 F.3d 527, 532 (10th Cir. 1998). Such actions are not simply limited to monetary losses in the form of wages or benefits.  Id.  The

-11-

Tenth Circuit applies a "case-by-case" approach, examining the unique factors relevant to the situation before it. See Hill, 97 Fed. Appx. at 278; Sanchez, 164 F.3d at 532. Nevertheless, adverse employment action does not include "a mere inconvenience or an alteration of job responsibilities." Id. (citations and quotations omitted).

In the pretrial order, plaintiff alleges as follows:

Plaintiff asserts that she is entitled to recover upon the following theory:

i.    Defendant terminated Plaintiff's employment in violation of 29 U.S.C. §§ 621-634 ("ADEA"), specifically, by discriminating against her based on age (Count I of complaint).

ii.   Defendant terminated Plaintiff's employment in violation of K.S.A. § 44-1113 ("KAAD"), specifically, by discriminating against her based on age (Count II of complaint).

Pretrial Order (Doc. #25) at 11.  The pretrial order also lists as an essential element of plaintiff's age discrimination claim that "[d]uring her employment [p]laintiff was treated less favorably than others not in the protected class or [p]laintiff was terminated as a result of disparate treatment." Pretrial Order (Doc. #25) at 11.  In response to defendant's motion for summary judgment, plaintiff broadly asserts that "[p]laintiff was treated differently than similarly situated, younger employees in that her performance was equal to, or better than these employees."   She states that this differential treatment would allow a jury "to conclude that the reason she was terminated was not due to her performance (the Defendant's asserted legitimate business reason) but rather her age." Plaintiff's Memorandum, Doc. 34-2, at 8.  Plaintiff's only evidence of differential treatment, however, is that defendant set goals for plaintiff to make a certain number of telemarketing calls per week. This goal began at 168-190, and ended at 500 calls per week.  Defendant closely monitored whether plaintiff made the goals, and pressured her to make more.  Meanwhile, although defendant

-12-

asked the hotel's general manager and assistant general mangers to make 60 calls per day to help plaintiff, defendant did not monitor their performance or discipline them for failing to make calls.

Although significant changes in job responsibilities may constitute adverse employment action, see Sanchez, 164 F.3d at 532; McCrary v. Aurora Pub. Schs., 57 Fed. Appx. 362, 362, 368 (10th Cir. 2003), defendant here did not reduce plaintiff's pay or benefits when defendant set the telephone call goals. Except as to her termination, therefore, it does not appear that plaintiff has identified adverse employment action which is actionable under the ADEA or the KADEA.

For purposes of summary judgment, defendant concedes that plaintiff was a member of the protected age group, that she was terminated and that defendant replaced her with a substantially younger person. Defendant contends that it is entitled to summary judgment, however, because plaintiff cannot establish that she was doing satisfactory work.

Plaintiff may establish that she was doing satisfactory work (1) with evidence that she continued to possess the objective qualifications she held when defendant hired her; (2) by her own testimony that her work was satisfactory; or (3) by evidence that she held her position for a significant period of time. MacDonald v. E. Wyo. Mental Health Ctr., 941 F.2d 1115, 1121 (10th Cir. 1991); Denison v. Swaco Geolograph Co., 941 F.2d 1416, 1421 (10th Cir. 1991) (plaintiff need only demonstrate that performance was of sufficient quality to merit continued employment). Here, defendant asserts that plaintiff has not established that she was doing satisfactory work. Plaintiff has not responded to this argument. Plaintiff has not pointed to any evidence that she continued to possess the qualifications she held when she was hired. Cf. MacDonald at 1121. The Court's review of the record reflects only that plaintiff testified that "I was working hard, I was doing a good

job.  I was working long hours."  See Plaintiff's Deposition at 129.[10]  Plaintiff's conclusory

testimony, which does not address the performance expectations which defendant communicated

to plaintiff, does not meet plaintiff's burden to set out a prima facie case.

**B.      Legitimate Nondiscriminatory Reason**

       If plaintiff established a prima facie case, the burden would shift to defendant to articulate

a legitimate, non-discriminatory reason for the adverse employment action.  See McDonnell

Douglas, 411 U.S. at 802.  Defendant points to evidence that it terminated plaintiff because of her

poor performance as sales manager of the Merriam Hampton, which was not performing well

compared to its competitors and to its past performance.  Defendant specifically asserts that it fired

plaintiff because she did not made an adequate effort in telemarketing.  This constitutes a legitimate

non-discriminatory reason.

       Because defendant has met its burden of offering a non-discriminatory reasons for the

terminating plaintiff's employment, plaintiff must establish by a preponderance of the evidence

"that the proffered reason was not the true reason for the employment decision."  Aramburu, 112

---

[10]      The record contains evidence that plaintiff held the job for only thirteen months.  The Court has found no cases discussing whether thirteen months constitutes a significant period of time in this context.  Cf. Saladin v. Packerware Corp., No. 99-4086, 2001 WL 476066, *3 (D. Kan. May 2, 2001) (plaintiff who held position for approximately ten years meets "satisfactory work" element of prima facie case); MacDonald, 941 F.2d at 1121 (plaintiffs met prima facie requirement where they held positions for four years and had only recently received unfavorable performance reviews); Gonzagowksi v. Widnall, No. 94-0016, 1995 WL 930486 (D. N.M., Oct. 17, 1995) (approximately ten years on job enough to establish satisfactory job performance).  Here, plaintiff started work on March 31, 2003.  The Merriam Hampton revenue lagged behind defendant's projections "throughout 2003," and in October or November, defendant hired Clark as a consultant to devise strategies for increasing hotel revenues.  Plaintiff knew by November of 2003 – seven months into the job – that defendant was not satisfied with her performance.  On this record, the Court finds as a matter of law that for purposes of establishing a prima facie case, plaintiff did not hold her position for a "significant period of time."

F.3d at 1403.  Plaintiff may show pretext by establishing either that a discriminatory reason more likely motivated defendant or that the employer's explanations are unworthy of credence.  Rea v. Martin Marietta Corp., 29 F.3d 1450, 1455 (10th Cir. 1994).  Typically, a plaintiff demonstrates pretext with evidence that (1) defendant's stated reason for the adverse action was false; (2) defendant acted contrary to written company policy prescribing the action to be taken by defendant under the circumstances; or (3) defendant acted contrary to an unwritten policy or contrary to company practice when making the adverse decision.  See Kendrick, 220 F.3d at 1230.  Plaintiff can show pretext under the third category by showing that defendant treated her differently from other similarly situated employees.  See id. (citing Aramburu, 112 F.3d at 1404).

Plaintiff contends that defendant's proferred reason is not legitimate because defendant treated her differently than similarly situated younger employees.  In support of this contention, however, plaintiff simply states that she was terminated at age 65 and that defendant replaced her with a 36-year-old.  Plaintiff does not identify any similarly situated employees.  Rather, citing "hiring statistics," plaintiff alleges that Clark did not want older women working for him – that Clark hired two women under 40 to take plaintiff's place.  As the Tenth Circuit has noted, "[s]tatistics taken in isolation are generally not probative of age discrimination."  Doan v. Seagate Tech., Inc., 82 F.3d 974, 979 (10th Cir. 1996).  In any event, plaintiff has produced no meaningful statistics.  Although evidence that an employer replaced plaintiff with a younger employee is sufficient to establish a prima facie case, plaintiff must produce evidence of pretext to rebut defendant's legitimate non-discriminatory explanation.  She has pointed to absolutely no such evidence.  For this reason, and because plaintiff has failed to establish a prima facie case, defendant is entitled to summary judgment.

**IT IS THEREFORE ORDERED** that Defendant's Motion For Summary Judgment (Doc. #28) filed January 18, 2006 be and hereby is **SUSTAINED**.

Dated this 23rd day of March, 2006 at Kansas City, Kansas.

s/ Kathryn H. Vratil
Kathryn H. Vratil
United States District Judge